**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*, |
|       Plaintiffs |
|       v. |
| JERSEY CITY HEALTHCARE PROVIDERS, LLC, |
|       Defendant |

Civil Action No. 17-1657 (CKK)

**MEMORANDUM OPINION**
(February 12, 2019)

Plaintiffs, Service Employees International Union National Industry Pension Fund and the Fund's Trustees, bring this action against Defendant, Jersey City Healthcare Providers, LLC, under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1001 *et seq.* Based on alleged non-payments and underpayments to Plaintiffs' pension fund from January 2012 through April 2017, Plaintiffs seek $34,383.66 in outstanding contributions, liquidated damages, interest, and audit testing fees. Plaintiffs also request attorneys' fees and costs and additional accrued interest. Defendant argues that it has made and continues to make all proper pension fund contributions. Plaintiffs have moved for summary judgment.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as it currently stands, the Court GRANTS Plaintiffs' Motion for Summary Judgment. The Court

---

[1] The Court's consideration has focused on the following documents:
- Pls.' Mot. for Summary Judgment ("Pls.' Mot."), ECF No. 18;
- Def.'s Opp'n to Pls.' Mot. for Summary Judgment and Mem. Of Points and Authorities in Support of Def.'s Opp'n ("Def.'s Opp'n"), ECF No.19;
- Pls.' Reply in Support of their Mot. for Summary Judgment ("Pls.' Reply"), ECF No. 20.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

concludes that Defendant was required to make increased supplemental contribution payments following the passage of the Multiemployer Pension Reform Act of 2014 ("MPRA"). *See* 29 U.S.C. § 1085. Because Defendant failed to make the increased supplemental contributions from September 2015 to April 2017, Plaintiffs are owed $32,715.50 in damages to account for the unpaid contributions, interest, and liquidated damages. The Court also concludes that Plaintiffs are owed $1,668.16 in unpaid contributions, interest, liquidated damages, and audit testing fees resulting from the pension fund's 2012-2013 audit of Defendant. Accordingly, Plaintiffs are GRANTED $34,383.66 in total damages based on Defendant's September 2015 to April 2017 unpaid supplemental contributions and on Defendant's 2012-2013 audit. Finally, the Court GRANTS Plaintiffs' motion for injunctive relief requiring Defendant to remit reports and contributions going forward in accordance with the collective bargaining agreements, the pension fund's documents, and federal law as Defendant has demonstrated a repeated unwillingness to comply with these requirements.

## I.    BACKGROUND

Plaintiffs and Defendant entered into a collective bargaining agreement ("CBA") spanning the period from April 1, 2010 to March 31, 2014. CBA, Ex. 1, ECF No. 18-1, 5. As is relevant to this case, the CBA established terms and conditions of employment for certified nursing assistants ("CNAs"), dietary staff, housekeeping staff, and recreational aides. *Id.* at 1A. Even though, by its terms, the CBA expired on March 31, 2014, Defendant has continued to make payments and remit reports to the pension fund in accord with the terms and conditions of the CBA. Pls.' Statement of Material Facts, ECF No. 18-9, ¶ 6; Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶ 84.

Under the terms of the CBA, Defendant "agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees

International Union National Industry Pension Fund" and "agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof." CBA, Ex. 1, ECF No. 18-1, 25.1-2. The CBA also states that Defendant "agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by the Agreement, including collection policies." *Id.* at 25.4.

Pursuant to the Trust agreement, the trustees adopted a Statement of Policy for Collection of Delinquent Contributions ("Collection Policy"). *See generally* Collection Policy, Ex. 3, ECF No. 18-3. Under the Collection Policy, employers are required to make contributions to the pension fund on or before the 15th of the month after the month in which the work was performed. *Id.* at 2.1. If the contributions are not received by their due date, the pension fund is entitled to collect interest on delinquent contributions at the rate of 10% per annum. *Id.* at 5.1. The Collection Policy further permits the pension fund to collect liquidated damages for any month where an employer is delinquent in its contributions. *Id*. at 5.2. The amount of liquidated damages is calculated as the greater of the interest due or 20% of the delinquent contributions. *Id*.

Pursuant to the Pension Protection Act of 2006 ("PPA"), the pension fund was determined to be in "critical" status for the plan years 2009 through 2017. *See* 29 U.S.C § 1085. Employers were notified of the pension fund's critical status by letters sent annually from 2009 to 2017. Ex. 4, ECF No. 18-4 (critical status letters to employers). Because the plan was in critical status, the PPA required the plan to implement a rehabilitation plan to correct its financial situation. 29 U.S.C. § 1085(e)(1). Under the rehabilitation plan adopted by the pension fund,

employers were required to make supplemental contributions. Ex. 5, ECF no. 18-5 (letter to employers explaining rehabilitation plan). Employers could choose to make their supplemental contributions under a Preferred Schedule or a Default Schedule. *Id.*

When Defendant negotiated its CBA in 2010, the parties agreed upon the Preferred Schedule for supplemental contributions. CBA, Ex. 1, ECF No. 18-1, 25.3. When the CBA expired on March 31, 2014, the pension fund was still in critical status. CBA, Ex. 1, ECF No. 18-1, 5 (setting the term of the contract). Following the CBA's expiration, the parties failed to successfully negotiate a new CBA. Pls.' Statement of Material Facts, ECF No. 18-9, ¶ 28; Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶ 82.

Lacking a new CBA, the pension fund continued to charge Plaintiffs for supplemental contributions at the same rate as had been charged prior to the CBA's expiration-37.6% of its base contractual contribution-until January 1, 2015. But, relying on the enactment of the MPRA, on January 1, 2015, the pension fund implemented a continuation of the Preferred Schedule which increased the rate of Defendant's supplemental contributions. Pls.' Statement of Material Facts, ECF No. 18-9, ¶¶ 29-30. Defendant contends that the rate of its supplemental contributions should not have increased because the MPRA was inapplicable as the parties' CBA expired prior to the MPRA's enactment. Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶¶ 29-30.

Based on Defendant's failure to pay the increased rates for supplemental contributions, Plaintiffs argue that Defendant underpaid its monthly contributions between September 2015 and April 2017. Including delinquent contributions, interest, and liquidated damages, Plaintiffs allege that Defendant owes $11,814.09 for dietary and housekeeping employees, $19,532.56 for CNAs, and $1,368.85 for recreational employees. Pls.' Statement of Material Facts, ECF No. 18-9, ¶¶

35-44. Accordingly, Plaintiffs argue that Defendant owes a total of $32,715.50 for delinquent contributions, interest, and liquidated damages based on a failure to pay increased supplemental contribution rates between September 2015 and April 2017. Defendant disputes this amount, contending that it made all required payments during this timeframe. Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶ 105.

In addition to the alleged damages owed from September 2015 to April 2017, Plaintiffs argue that Defendant also owes damages based on a prior audit of Defendant's contributions. In 2014, the pension fund audited Defendant's contributions for calendar years 2012-2013. Pls.' Statement of Material Facts, ECF No. 18-9, ¶ 45; Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶ 45. Defendant produced hundreds of pages of records in response to the pension fund's audit request, including records indicating hours worked, amounts paid, and employment status of employees. Pls.' Statement of Material Facts, ECF No. 18-9, ¶ 47; Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶ 85.

Based on the results of the 2012-2013 audit, the pension fund determined that Defendant owed $63.23 in delinquent contributions, interest, and liquidated damages for its dietary and housekeeping employees. Pls.' Statement of Material Facts, ECF No. 18-9, ¶¶ 53-58. The pension fund also determined that Defendant owed $1,604.93 in delinquent contributions, interest, liquidated damages, and audit testing fees for its recreational employees. *Id.* at ¶¶ 59-65. Accordingly, Plaintiffs contend that Defendant owes a total of $1,668.16 in delinquent contributions, interest, liquidated damages, and audit testing fees based on the 2013-2013 audit. Defendant disputes this amount, contending that it made all required payments during this timeframe. Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶ 105.

On August 15, 2017, Plaintiffs filed this lawsuit under ERISA to collect $34,383.66 in allegedly unpaid contributions, interest, liquidated damages, audit testing fees. *See generally* Compl., ECF No. 1. The parties subsequently engaged in discovery. *See generally* Joint Discovery Plan, ECF No. 15. Plaintiffs have now moved for summary judgment. *See generally*, Pls.' Mot, ECF No. 18.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record-including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence-in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly

address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not assess credibility or weigh evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with "all justifiable inferences ... drawn in his favor." *Anderson*, 477 U.S. at 255. "'If material facts are at issue, or though undisputed, are susceptible to divergent inferences, summary judgment is not available.'" *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### III.    DISCUSSION

Plaintiffs bring this case seeking delinquent contributions and other damages under Section 515 of ERISA which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. This section of ERISA "makes a federal obligation of an employer's contractual commitment to contribute to a multiemployer pension fund." *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004). Accordingly, it is "well-established that the failure to make contributions

to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § 515." *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 95 (D.D.C. 2011) (internal quotations omitted). Moreover, when a Court determines that an employer violated Section 515 of ERISA by failing to make contributions to a pension fund as required by a collective bargaining agreement or by the pension fund's documents, the plan is entitled to recover the contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate equitable relief. 29 U.S.C. § 1132(g)(2).

Plaintiffs move for summary judgment as to all known outstanding contributions, liquidated damages, interest, and audit testing fees in the amount of $34,383.66 plus attorneys' fees and costs and additional accrued interest. Defendant has two primary arguments as to why the Court should not grant summary judgment. First, Defendant contends that it was not required to pay the increased rate for supplemental contributions between September 2015 and April 2017. But, the Court concludes that Defendant was required to make supplemental contributions at the increased rate based on the MPRA. Second, Defendant claims that there are genuine disputes of material fact as to the alleged damages owed. But, the Court concludes that Plaintiffs have produced sufficient evidence proving that they are entitled to the requested $34,383.66 in damages and Defendant has not provided contrary evidence. In addition to monetary damages, the Court also concludes that Plaintiffs have established that injunctive relief requiring Defendant to act in accordance with the collective bargaining agreements, the pension fund's documents, and federal law is appropriate. Accordingly, Plaintiffs' motion for summary judgment is GRANTED.

**A. Applicability of the MPRA to Defendant's Supplemental Contributions**

The Court will first address whether or not Defendant was required to pay an increased rate for supplemental contributions to the pension fund pursuant to the MPRA between September 2015 and April 2017. Due to the pension fund's critical status, Defendant was obligated to make supplemental contributions under the rehabilitation plan. Ex. 5, ECF No. 18-5 (explaining the rehabilitation plan to employers). The parties dispute the amount of supplemental contributions owed between September 2015 and April 2017. As explained below, the Court finds that Defendant was required to make supplemental contributions to the pension fund at the rate required by the MPRA.

Under the PPA, multi-employer pension funds undergo an annual certification process in which the plan's actuary assesses the financial health of the plan. 29 U.S.C. § 1085(b)(3)(A). Plaintiffs' pension fund has been designated "critical" each year between 2009 and 2017. Because of the fund's critical status, the pension fund was required to develop a rehabilitation plan to improve funding. *Id.* at § 1085(a)(2). The rehabilitation plan was required to include reductions in future benefits and increases in future employer contributions. *Id.* at § 1085(e)(1)(B), (e)(3)(A).

The supplemental contributions required employers to make contributions above the existing base contribution established by contract as expressed as a percentage of the base contribution. The pension fund's rehabilitation plan allowed employers to choose between a Preferred and a Default Schedule for making supplemental contributions. Ex. 5, ECF No. 18-5 (letter to employers explaining rehabilitation plan). Defendant bargained for the Preferred Schedule in its CBA which was effective between April 1, 2010 and March 31, 2014. CBA, Ex.

1, ECF No. 18-1, 25.3. Under the Preferred Schedule, Defendant's supplemental contribution rate increased to 37.6% of its base contribution as of April 1, 2013 and would have increased to 48.3% as of April 1, 2014 if the CBA had not expired. Declaration of Kisha Smith, ECF No. 18-7, ¶ 26. However, on March 31, 2014, the CBA expired while the plan was still in critical status. The parties dispute the effect of the CBA's expiration.

Because the CBA expired while the plan was in critical status, Plaintiffs argue that rate of Defendant's supplemental contributions was set by the amendments to the PPA made in 2014 through the MPRA. Under the MPRA, a pension fund must continue to enforce an employer's obligation to contribute at the rates required under its previously-selected schedule if the parties fail to negotiate a contract in conformance with the rehabilitation plan within 180 days of the expiration of the parties' prior agreement. 29 U.S.C. § 1085(e)(3)(C)(ii), (iii).

Here, Defendant had contracted to make supplemental contributions in accord with the rehabilitation plan's Preferred Schedule. While the pension fund was still in critical status, the CBA expired. Accordingly, under the MPRA, the pension fund was required to implement the Preferred Schedule on Defendant 180 days after the CBA's expiration. *Id.* But, the CBA expired on March 31, 2014, approximately nine months prior to the MPRA's effective date of December 16, 2014. Plaintiffs ask that the Court begin applying the supplemental contribution rates required under the MPRA on January 1, 2015, which is after the MPRA's effective date and more than 180 after the CBA's expiration.

Accordingly, from the expiration of the CBA to the end of the 2014 calendar year, the pension fund charged Defendant for supplemental contributions at the rate of 37.6% as required by Defendant's contractual selection of the Preferred Schedule. But, after January 1, 2015, Plaintiffs contend that Defendant's supplemental contribution rates are controlled by the MPRA.

As such, from January 1, 2015 to January 1, 2016, the pension fund charged Defendant for supplemental contributions at the rate of 48.3% as required by the pension fund's implementation of the Preferred Schedule under the MPRA. Also based on the pension fund's implementation of the Preferred Schedule as required by the MPRA, the pension fund charged Defendant for supplemental contributions at a rate of 59.8% between January 1, 2016 and January 1, 2017 and at a rate of 72.1% between January 1, 2017 and January 1, 2018. Declaration of Kisha Smith, ECF No. 18-7, ¶ 26.

Defendant argues that the increased rates for supplemental contributions required under the MPRA should not apply because the CBA expired prior to the MPRA's effective date. Because the MPRA was not in effect during the duration of the parties' contractual agreement, Defendant argues that to apply the MPRA to Defendant's September 2015 to April 2017 payments would have an impermissibly retroactive effect.

The Court agrees with Defendant that the MPRA amendments are likely not retroactive amendments. However, the retroactivity of the MPRA is irrelevant as Plaintiffs do not request a retroactive application of the law. Plaintiffs do not seek the increased supplemental contribution rates prior to the enactment of the MPRA. Instead, Plaintiffs seek the increased supplemental contribution rates as of January 1, 2015, the first day of the plan year following the enactment of the MPRA.

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994) (internal citation omitted). In order to determine if the application of a statue has an impermissible retroactive effect, courts first look to "whether Congress has expressly prescribed the statute's proper reach." *Fernandez-Vargas v.*

*Gonzales*, 548 U.S. 30, 37 (2006) (internal quotation marks omitted). Here, Congress has not expressly prescribed the reach of the MPRA amendments. Next, courts consider "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment." *Id.* (internal quotation marks omitted). Only if the applying the statute would have such an impermissible effect does the court then apply the presumption against retroactivity by construing the statute as inapplicable. *Id.* at 37-38.

Here, applying the MPRA to Defendant's supplemental contributions after January 1, 2015 would not affect Defendant's duties on the basis of conduct arising before the MPRA's enactment. Following the expiration of the CBA, Defendant received two "critical" status letters informing Defendant that there would be no changes to the schedules of contribution rates under the rehabilitation plan. Declaration of Kisha Smith, ECF No. 18-7, ¶ 23.[2] Accordingly, Defendant was aware that the rates for supplemental contributions remained the same under the rehabilitation plan's Preferred Schedule. Application of the increased supplemental contribution rates after the MPRA's enactment on January 1, 2015 is not retroactive because such application is based on Defendant's continued participation in the fund, conduct arising after the MPRA's enactment.

In making this determination, the Court receives guidance from the United States Supreme Court's decision in *Martin v. Hadix*, 527 U.S. 343 (1999). In that case, the Supreme

---

[2] Defendant does not deny receiving the critical status letters informing employers that there would be no changes to the schedule of contribution rates required under either schedule of the pension fund's rehabilitation plan. Pls.' Statement of Material Facts, ECF No. 18-9, ¶ 27. Instead, Defendant states that this fact is "immaterial and contain[s] improper legal conclusions." Def.'s Res. To Pls.' Statement of Material Facts, ECF No. 19-1, ¶ 27. But the Court find that this fact is neither immaterial nor an improper legal conclusion.

Court applied the Prison Litigation Reform Act's ("PLRA") fee limits to limit attorneys' fees earned after the PLRA's enactment, but not to limit those fees earned before the enactment. The Supreme Court explained that attorneys conducting post-judgment monitoring before the PLRA's enactment had a reasonable expectation that they would be compensated at pre-PLRA rates, so the application of the PLRA fee-limit to those fees would have an impermissible retroactive effect. *Martin*, 527 U.S. at 358. But, with respect to post-judgment monitoring performed after the effective date of the PLRA, the Court concluded that there was no retroactivity problem. Following the PLRA's enactment, the attorneys were on notice that their fees had been limited and they could choose not to perform services at the new, lower rate. *Id.* at 360. "In other words, as applied to work performed after the effective date of the PLRA, the PLRA has future effect on future work; this does not raise retroactivity concerns." *Id.* The Court explained that the attorneys pre-PLRA conduct in deciding to file suit was not impermissibly affected because if the attorneys were dissatisfied with the fee limits imposed by the PLRA's enactment, those attorneys could cease completing work during the post-judgment monitoring stage. *Id.*

Similarly, here, the MPRA would have a retroactive effect only if Plaintiffs asked to apply the increased supplemental contribution rates to payments occurring before the MPRA's enactment. But, Plaintiffs do not ask for such an application. Instead, they ask to apply the increased supplemental contribution rates only to payments occurring after the MPRA was enacted. Such application does not have a retroactive effect. With the enactment of the MPRA, Defendant was on notice of the increased supplemental contribution rates. If Defendant found the new terms unacceptable, Defendant could have withdrawn from the pension fund. As applied to

conduct occurring "after the effective date of the [MPRA], the [MPRA] has future effect on future [conduct]; this does not raise retroactivity concerns." *Martin*, 527 U.S. at 360.

For the foregoing reasons, the Court concludes that applying the MPRA's increased supplemental contribution rates to payments made after the enactment of the MPRA does not raise retroactivity concerns. Accordingly, after January 1, 2015, Defendant was required to make supplemental contribution payments in accord with the rates set by the Preferred Schedule under the rehabilitation plan as mandated by the MPRA. Plaintiffs are entitled to collect these unpaid supplemental contributions under the PPA which provides that "any failure to make a contribution under a schedule of contribution rates provided under [a rehabilitation plan contribution schedule] shall be treated as a delinquent contribution under [Section 515 of ERISA] and shall be enforceable as such." 29 U.S.C. § 1085(e)(3)(C)(iv); 29 U.S.C. 1145 (Section 515 of ERISA, requiring employers to make contributions under the terms of the pension fund's plan or other agreement).

### B. Genuine Disputes of Material Facts as to Damages Owed

Even if the MPRA is applicable, Defendant argues that the Court should not grant Plaintiffs' motion for summary judgment as to damages because there remain genuine disputes of material fact concerning damages owed for unpaid supplemental contributions between September 2015 and April 2017 and for damages owed from the pension plan's 2012-2013 audit. Defendant presents three primary arguments as to why there remain genuine disputes of material fact concerning damages owed. First, Defendant argues that the method by which Plaintiffs calculated damages is speculative and unclear. Second, Defendant contends that Plaintiffs provided inadequate proof of their measure for the damages. Finally, Defendant claims that Plaintiffs' 2012-2013 audit incorrectly identified Laura Bazile as a union employee subject to

contributions. The Court is not persuaded by Defendant's arguments and will address each in turn.

First, Defendant claims that the method by which Plaintiffs calculated their damages is speculative and unclear. Specifically, Defendant faults Plaintiffs for failing to indicate what eligibility criteria the pension fund applied when determining whether or not Defendant made the required contribution payments. Defendant also faults Plaintiffs for not indicating what portions of an employee's pay the pension fund used as the basis for that person's pension fund contribution. According to Defendant, "without any of this key information, it is impossible to know whether the Pension Fund is accurately assessing who is eligible for contributions and whether the proper portions of each eligible employee's pay are being used to calculate the contributions." Def.'s Opp'n, ECF No. 19, 11.

"While damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages." *Wood v. Day*, 859 F.2d 1490, 1493 (D.C. Cir. 1988) (internal quotation marks omitted). Damages may not be based on mere speculation and guesswork. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Here, the Court finds that Plaintiffs' requested damages have a reasonable basis in fact and law.

In her Declaration, Kisha Smith, a Contribution Compliance Manager for the pension fund, described in detail the method used to determine the proper damages owed for underpayments of supplemental contributions from September 2015 through April 2017. *See generally* Declaration of Kisha Smith, ECF No. 18-7. In order to calculate the damages owed, Plaintiffs multiplied the number of hours reported in Defendant's remittance reports by the base rate for contributions as required under the applicable contract and the rate of supplemental

contributions as required by the pension fund's rehabilitation plan. *Id.* at ¶ 31. Plaintiffs then compared the amount due, which was based upon hours reported by Defendant, with the amount Defendant actually paid. *Id.* at ¶ 32. If the reports revealed that Defendant underpaid its supplemental contribution for a particular month, interest and liquidated damages were assessed. *Id.* at ¶¶ 33-35. Interest was calculated at a rate of 10% per year on the underpaid contributions and liquidated damages were calculated at a rate of 20% of the underpaid contributions as set out by the pension fund's Collection Policy. *Id.*; Collection Policy, Ex. 3, ECF No. 18-3, 5.1-2 (establishing interest rates and liquidated damages). Considering Ms. Smith's Declaration, the Court finds that Plaintiffs provided a reasonable methodology for calculating damages owed between September 2015 and April 2017.

Similarly, in his Declaration, Andre Joseph, the pension fund's Payroll Review Manager, described a reasonable methodology for assessing unpaid contributions, interest, and liquidated damages resulting from the 2012-2013 audit process. *See generally* Declaration of Andre Joseph, ECF No. 18-8. Plaintiffs reviewed Defendant's own remittance reports. *Id.* at ¶ 15. Plaintiffs then reviewed certain payroll records and other documents to verify that Defendant did not exclude any eligible employees and that Defendant accurately reported hours worked and salaries. *Id.* at ¶ 16. Where the audit revealed that Defendant had underreported certain hours, the pension fund assessed interest and liquidated damages for delinquent contributions. *Id.* at ¶ 19. Considering Mr. Joseph's Declaration, the Court finds that Plaintiffs provided a reasonable methodology for calculating damages owed resulting from the 2012-2013 audit.

The reasonableness of Plaintiffs' methodology is highlighted by the fact that Defendant cites no evidence establishing that Plaintiffs' method of calculating damages resulted in any errors. Plaintiffs based their damages calculations on Defendant's own reports and documents.

Accordingly, Defendant possessed the necessary documentation to rebut Plaintiffs' damages calculation. But, instead of producing documents within its control showing that Plaintiffs' damages calculations are incorrect, Defendant relies solely on the Declaration of its counsel, David Jasinski, as "evidence" of error. In his Declaration, Mr. Jasinski states that "[t]o the extent that Plaintiffs believe required contributions have not been made, the Pension Fund has improperly included, as part of the contribution calculus, certain earnings that should be excluded from the calculation and/or individuals who have not met the required threshold criteria." Declaration of David F. Jasinski, Esq., ECF No. 19-2, ¶ 37.

The Court does not consider this conclusory allegation contained in Defendant's lawyer's Declaration sufficient "evidence" to overcome Plaintiffs' motion for summary judgment. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(c)(4). Mr. Jasinski's Declaration does not meet this standard. Mr. Jasinski is Defendant's counsel and not a regular employee of Defendant. He provides no facts establishing personal knowledge as to Defendant's regular method for making pension fund contributions. Moreover, with the exclusion of Ms. Bazile which will be addressed below, Mr. Jasinski presents no facts to support his vague allegation that the pension fund improperly included earnings and individuals that should have been excluded from the contribution calculation. Because Mr. Jasinski's Declaration does not comport with Federal Rule of Civil Procedure 56, and because it contains only unsupported allegations, the Court will not consider it as "evidence" of Plaintiffs' incorrect calculation of damages. *See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr.*, 153 F. Supp. 3d 363, 374 (D.D.C. 2016) ("When damages under an ERISA multiemployer

pension plan are in dispute, an employer opposing summary judgment must likewise point to specific facts in the record to demonstrate a genuine issue for trial." (internal quotation marks omitted)).

Despite access to the necessary documents, Defendant does not provide its own analysis of damages or any specific contradictions of Plaintiffs' damages calculations. Instead, Defendant relies solely on its counsel's Declaration and the conclusory allegations therein. "Under such circumstances, defendant cannot avoid summary judgment simply by speculating that plaintiffs may have erroneously included ineligible hours without offering any support for that contention. Yet, that is precisely what [defendant] has done here. Accordingly, [defendant] has failed to show that there is a genuine dispute as" to damages owed. *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Harborview Healthcare, Inc.*, 191 F. Supp. 3d 13, 19 (D.D.C. 2016) (addressing the same argument made by Defendant in another case).

Second, Defendant contends that Plaintiffs provided inadequate proof for their measure of the damages owed. Specifically, Defendant argues that "Plaintiffs failed to include in the spreadsheets provided to the Court the hours or salaries reported by [Defendant] for several of the months for which Plaintiffs allege underpayments." Def.'s Opp'n, ECF No. 19, 11. But, the Court finds that Plaintiffs provided adequate proof for their measure of damages owed.

Plaintiffs submitted uncontroverted evidence of the hours or salaries of union employees and their effect on the supplemental contributions owed by Defendant between September 2015 and April 2017. Plaintiffs attached spreadsheets to Ms. Smith's Declaration summarizing Defendant's remittance reports, records of contributions paid to the pension fund, and records of contributions owed including interest and liquidated damages. Exhibit A to Ms. Smith's Declaration includes a spreadsheet showing unpaid contributions, interest, and liquidated

damages totaling $11,814.09 for dietary and housekeeping employees between September 15, 2015 and April 15, 2017. Declaration of Kisha Smith, ECF No. 18-7, Ex. A. Exhibit B shows the same for CNAs between September 15, 2015 and April 15, 2017 with a total of $19,532.56 due. *Id.* at Ex. B. And, Exhibit C shows the same for recreational employees between September 15, 2015 and April 15, 2017 with a total of $1,368.85 due. *Id.* at Ex. C. These summary spreadsheets are admissible summaries of voluminous documents which may be used "to prove the content" of the underlying documents. Fed. R. Evid. 1006 (allowing summaries or charts to prove the content of voluminous records which "cannot be conveniently examined in court"); *see Harborview Healthcare*, 191 F. Supp. 3d at 18 (allowing the use of spreadsheets to summarize remittance reports and records of contributions). These spreadsheets are sufficient to provide the Court with reasonable proof of the damages owed.

Similarly, Plaintiffs provided the court with uncontroverted evidence of the reported wages and required wages for those employees subject to the 2012-2013 audit report. Ex. 6, ECF No. 18-6. These reports show the wages which Defendant reported to the pension fund and the wages the pension fund determined were required based on tax forms, payroll documents, and other records. Based on this information, the spreadsheets show the variances between the reported wages and the required wages to establish if Defendant underpaid for any pension fund contributions. As above, the spreadsheets containing this data are admissible summaries of voluminous documents which may be used "to prove the content" of the underlying documents. Fed. R. Evid. 1006.

If Defendant has reason to think that Plaintiffs' summary evidence is inaccurate, then the burden falls on Defendant to rebut the summaries with affirmative evidence of its own. *See* Fed. R. Civ. Pro. 56(c) ("A party asserting that a fact ... is genuinely disputed must support that

assertion by ... citing to particular parts of material in the record ... or ... showing that the materials cited do not establish the absence ... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). But, Defendant failed to produce any such affirmative evidence. Defendant did not provide a contrary estimate of damages owed, nor did Defendant identify any specific errors in Plaintiffs' spreadsheets (with the exception of Ms. Bazile which will be discussed below). Without such evidence, Defendant has not met its burden to point to specific facts in the record that reveal a genuine issue suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The only specific complaint that Defendant makes is that Plaintiffs failed to include spreadsheets for several months for which Plaintiffs allege underpayments. But, Defendant does not alert the Court to which months it contends are missing from Plaintiffs' spreadsheets.

The only omission the Court could identify occurs in the spreadsheet attached as Exhibit B to Ms. Smith's declaration concerning unpaid contributions for CNAs from September 2015 to April 2017. Declaration of Kisha Smith, ECF No. 18-7, Ex. B. In that spreadsheet, certain figures in the "Hours or Salary Reported" column do not contain numbers and instead contain "####." *Id.* But, this omission was merely a formatting error which occurred when Plaintiffs converted the spreadsheet to a PDF for filing. *See* Declaration of Diana M. Bardes, ECF No. 20-1, ¶ 5. And, Plaintiffs subsequently filed a complete version of the spreadsheet for the Court's review. *Id.* at Ex. A. Defendant provides no argument as to why this filing error caused it prejudice, and the Court concludes that no prejudice occurred as Defendant was in possession of the complete spreadsheet since January 5, 2018. *Id.* at ¶ 6.

Third, Defendant argues that there remain genuine disputes of material fact because Plaintiffs' 2012-2013 audit incorrectly identified Laura Bazile as a union employee subject to

contributions. Defendant concedes that from January 1, 2013 to January 30, 2013, Ms. Bazile

was a union recreational employee covered by the CBA. But, Defendant claims that Ms. Bazile

was promoted to a non-union recreational therapist position beginning January 31, 2013.

Declaration of David F. Jasinski, Esq., ECF No. 19-2, ¶¶ 18-19. And on October 24, 2013,

Defendant claims that Ms. Bazile was again promoted to another non-union position. *Id.* at ¶ 20.

Based on Ms. Bazile's promotions to non-union positions, Defendant claims that Plaintiffs erred

in including Ms. Bazile as a union employee subject to contributions from March 2013 to

December 2013.

   The only support that Defendant provides for this alleged error in Plaintiffs' audit is the

Declaration of its counsel, Mr. Jasinski. *See* Def.'s Res. To Pls.' Statement of Material Facts,

ECF No. 19-1, ¶¶ 86-91 (citing only to Mr. Jasinski's Declaration). But, a Declaration used to

oppose a motion for summary judgment must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the declarant is competent to testify on the

matters stated. Fed. R. Civ. Pro. 56(c)(4). And, Mr. Jasinski's Declaration provides no

foundation to support his allegation concerning Ms. Bazile. He does not state that he has

personal knowledge as to Ms. Bazile's employment history nor does he provide any documents

establishing her employment positions at the relevant times. The lack of documentation is

especially concerning given that, as Ms. Bazile's employer, Defendant would have easy access to

her employment records.

   The Court also notes that Mr. Jasinski's alleged "facts" concerning Ms. Bazile's

employment history are confusing and unclear. Mr. Jasinski states that "Plaintiffs incorrectly

identified Ms. Bazile as a union employee for the months of March 2013 through December

2013." Declaration of David F. Jasinski, Esq., ECF No. 19-2, ¶ 17. Mr. Jasinski explained that

such identification was incorrect because Ms. Bazile was promoted to a non-union position on January 31, 2013. But, if Ms. Bazile was promoted to a non-union position in January 2013, it is not clear why Defendant has not claimed that Plaintiffs erred by treating her as a union employee in February 2013.

Moreover, Defendant and its counsel have been in possession of the audit findings regarding Ms. Bazile since at least September 9, 2016, but failed until now to raise the issue of Ms. Bazile being improperly identified as a union employee. *See* Declaration of Andre Joseph, ECF No. 18-8, Ex. B. During Ms. Smith's deposition on January 12, 2018, Mr. Jasinski asked Ms. Smith why she thought that Defendant did not report Ms. Bazile's work hours to the pension fund for the months of March 2013 to December 2013. Declaration of Diana M. Bardes, ECF No. 20-1, Ex. C, 16-25. Mr. Jasinski posited that Defendant did not report Ms. Bazile's work hours for those months because she did not work during those months. *Id.* at 25 ("Is it possible that Ms. Bazile did not work in 2013 for the months of March through December?"). Based on Mr. Jasinski's theory that Defendant failed to report Ms. Bazile's hours because she did not work, Plaintiffs supplied the Court with evidence showing that Ms. Bazile did in fact work during the months at issue. Declaration of Andre Joseph, ECF No. 18-8, Ex. E, Ex. F. It is only at the summary judgment stage that Mr. Jasinski has for some reason, unsupported by personal knowledge or documentation, changed his rationale for the failure to report Ms. Bazile's hours.

Lacking a foundation of personal knowledge and without any documentation to support his conclusory allegation, Mr. Jasinski states that Plaintiffs erred in identifying Ms. Bazile as a union employee from March 2013 to December 2013. The Court concludes that such "evidence," unsupported by documentation or a foundation of personal knowledge, is insufficient to defeat Plaintiffs' motion for summary judgment. *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d

1164, 1174 (D.C. Cir. 1981) (noting that the "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented" and that "[a]n affidavit based merely on information and belief is unacceptable"); *see also Barnette v. Ridge*, No. 02-1897, 2004 WL 3257071, at *6 n.6 (D.D.C. Nov. 15, 2004) (explaining that "[t]he mere arguments of counsel ... are not evidence" that may be used to defeat a motion for summary judgment).[3]

Having considered each of Defendant's arguments, the Court concludes that Defendant has produced no evidence demonstrating a genuine dispute of material fact as to the damages owed. Accordingly, the Court proceeds to decide whether the undisputed facts establish that Plaintiffs are entitled to judgment as a matter of law. *See Bristol Manor Healthcare Ctr.*, 153 F. Supp. 3d at 376.

Plaintiffs' spreadsheets are the only evidence showing the total amount of unpaid contributions, interest, and liquidated damages owed to Plaintiffs between September 2015 and April 2017. *See* Declaration of Kisha Smith, ECF No. 18-7, Exs. A, B, and C. According to Plaintiffs' spreadsheets, for unpaid contributions, interest, and liquidated damages, Defendant owes $11,814.09 for dietary and housekeeping workers, $19,532.56 for CNA workers, and $1,368.85 for Recreational workers. *Id.* Based on these figures, the total damages for Defendant's outstanding contributions, interest, and liquidated damages is $32,715.50. Lacking any contrary evidence from Defendant, the preponderance of the evidence supports awarding Plaintiffs $32,715.50 for unpaid contributions, interest, and liquidated damages between September 2015 and April 2017. *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011) (applying

---

[3] Plaintiffs state that they have attempted to confirm Mr. Jasinski's account of Ms. Bazile's employment history but have been unable to do so. Plaintiffs further state that "[s]hould documentation come to light proving that Ms. Bazile was not a member of the bargaining unit during this time, the Pension Funding would adjust the audit findings." Pls.' Reply, ECF No. 20, 14 n.3.

the "preponderance of the evidence" standard, which is "the default rule for civil cases," to ERISA cases).

Plaintiffs' spreadsheets are also the only evidence showing the total amount of unpaid contributions, interest, liquidated damages, and audit testing fees owed to Plaintiffs based on Defendant's audit for calendar years 2012-2013. Ex. 6, ECF No. 18-6. Based on these spreadsheets and Mr. Andre's Declaration and attached exhibits, Defendant owes $63.23 in unpaid contributions, interest, and liquidated damages for its dietary and housekeeping employees, and $1,604.93 in unpaid contributions, interest, liquidated damages, and audit testing fees for its recreational employees. *Id.*; *see also* Declaration of Andre Joseph, ECF No. 18-8, ¶¶ 21-27. Lacking any contrary evidence from Defendant, the preponderance of the evidence supports awarding Plaintiffs $1,668.16 for unpaid contributions, interest, liquidated damages, and audit testing fees based on Defendant's 2012-2013 audit.

Combining the $32,725.50 in contributions, interest, and liquidated damages owed between September 2015 and April 2017 and the $1,668.16 in contributions, interest, liquidated damages, and audit testing fee owed for the 2012-2013 audit, Plaintiffs' combined damages total the requested $34,383.66. Accordingly, the Court GRANTS Plaintiffs' damages request.

Plaintiffs are also entitled to an award of attorneys' fees and costs. *See* Collection Policy, ECF No. 18-3, 5.3-4; *see also* 29 U.S.C. § 1132(g)(2) (allowing attorneys' fees and costs under ERISA). Attorney's fees will be assessed "at a reasonable hourly rate (which rate shall be no less than the hourly rate charged to the Fund for such services) for all time spent by legal counsel in collection efforts." Collection Policy, ECF No. 18-3, 5.3. Accordingly, Plaintiffs may move for attorneys' fees and costs. Additionally, insofar as additional interest may have accrued since the

filing of Plaintiffs' motion, the Court grants Plaintiffs leave to request that additional accrued interest in its briefing.

## C. Injunctive Relief

In addition to monetary damages, Plaintiffs request injunctive relief requiring Defendant to remit reports and contributions going forward in accordance with the collective bargaining agreements, the pension fund's documents, and federal law.

Section 502(g)(2)(E) of ERISA provides that a court may award "such other legal or equitable relief as [it] deems appropriate." 29 U.S.C. § 1132(g)(2). Injunctive relief is appropriate when "the defendant has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 242 (D.D.C. 2007) (citation omitted). Here, Plaintiffs have presented evidence that Defendant has ignored letters sent by the pension fund asking Defendant to pay the required contributions and to make the required reports. Declaration of Kisha Smith, ECF No. 18-7, ¶ 39. Additionally, the pension fund has previously filed a lawsuit against Defendant to collect unpaid contributions. *Id.* at ¶¶ 40-41. As a result of that lawsuit, Defendant was ordered to pay $59,599.76 in contributions, interest, liquidated damages, and attorneys' fees and costs. *Id.*; *see generally Harborview Healthcare Center, Inc.*, 191 F. Supp. 3d 13. Plaintiffs state that Defendant has not complied with the judgment amount and that the fund's attorneys are attempting to pursue collection. Declaration of Kisha Smith, ECF No. 18-7, ¶ 42. Accordingly, the Court finds that injunctive relief is appropriate based on Defendant's demonstrated unwillingness to comply with its obligations to the pension fund. *See Freeman-Carder*, 498 F. Supp. 2d at 242. Moreover, Plaintiffs' requested injunction serves only to "reiterate[] what is already the defendant's contractual obligation[]."

*Teamsters Local 639-Emp'rs Health Trust v. Boiler and Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 108 (D.D.C. 2008). Accordingly, the Court finds that injunctive relief is appropriate.

Defendant contends that injunctive relief should be denied because Plaintiffs cannot show irreparable harm as required in the analysis for granting injunctive relief under *eBay Inc. v. MercExhcange, LLC*, 547 U.S. 388 (2006). 547 U.S. at 391. But, Defendant fails to cite any case in this circuit in which the court engaged in the *eBay* analysis when granting injunctive relief under Section 502(g)(2)(E) of ERISA. *See, e.g., Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 20-21 (D.D.C. 2013) (granting injunctive relief under Section 502(g)(2)(E) without engaging in *eBay* analysis); *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 26 (D.D.C. 2009) (same); *Freeman-Carder*, 498 F. Supp. 2d at 242 (same). And, insofar as irreparable harm is required, the Court finds that Plaintiffs have established irreparable harm as they are required to make benefit payments to plan participants regardless of whether or not Defendant makes the required contributions. Additionally, Defendant's repeated unwillingness to make the required contributions risks harming Plaintiffs by setting them on a repeated loop of litigation to obtain the required contributions.

For the foregoing reasons, the Court GRANTS Plaintiffs' request for injunctive relief requiring Defendant to remit reports and contributions going forward in accordance with the collective bargaining agreements, the pension fund's documents, and federal law.[4]

---

[4] In addition to its ERISA claim, Plaintiffs also seek Defendant's delinquent contributions under Section 301 of the Labor Management Relations Act ("LMRA"). But, the vast bulk of Plaintiffs' motion and all of Plaintiffs' response focus on its ERISA claim. And, Plaintiffs' arguments under the LMRA merely summarize their ERISA arguments. As the relief granted under the LMRA would be the same as that granted under ERISA, the Court need not address Plaintiffs' LMRA claim. *See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Tnuzeg Holdings, LLC*, No. 17-1655, 2018 WL 3962925, *7 (D.D.C. Aug. 17, 2018) (declining to address the plaintiff's LMRA claim because no additional remedy was available beyond that ordered under ERISA).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is GRANTED. Defendant was required under the MPRA to make increased supplemental contributions and failed to do so between September 2015 and April 2017. There is no genuine dispute of material fact as to the amount of damages owed for this violation. Nor is there a genuine dispute of material fact as to the amount of damages owed based on Defendant's 2012-2013 audit. Finally, the Court concludes that injunctive relief is appropriate as Defendant has demonstrated an unwillingness to comply with the pension fund's requirements and federal law.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
